IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY JAMES WASHINGTON | § | |
| (TDCJ No. 1764357), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:15-cv-2046-M-BN |
| | § | |
| LORIE DAVIS, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division,[1] | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Timothy James Washington, a Texas inmate, proceeding *pro se*, has

filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court

should deny the application for the reasons explained below.

**Applicable Background**

Washington's Section 2254 petition challenges his 2012 conviction for burglary

of a habitation, pursuant to which he was sentenced to fifty years of imprisonment, a

sentence that was enhanced because of previous felony convictions. *See State v.*

*Washington*, No. 33701-CR (13th Dist. Ct., Navarro Cty., Tex. Jan. 13, 2012). This

conviction and judgment (together with Washington's state-jail-felony conviction for

---

[1] Lorie Davis has succeeded William Stephens as Director of the Texas
Department of Criminal Justice, Correctional Institutions Division, and, as his
successor, she is "automatically substituted as a party." FED. R. CIV. P. 25(d).

drug possession) was affirmed on direct appeal. *See Washington v. State*, Nos. 10-12-0068-CR & 10-12-00069-CR, 2013 WL 5952144 (Tex. App. – Waco Nov. 17, 2013). And the Texas Court of Criminal Appeals (the "CCA") refused Washington's petition for discretionary review. *See Washington v. State*, PD-1746-13 (Tex. Crim. App. Mar. 12, 2014).

Washington sought habeas review in the state courts, and the CCA denied his petition without a written order. *See Ex parte Washington*, WR-83,612-01 (Tex. Crim. App. Nov. 4, 2015); *see also* Dkt. No. 9-14 at 51-60 (state habeas court findings of fact and conclusions of law).

The following are the facts underlying Washington's convictions and sentences as set out by the Waco Court of Appeals:

> Bazel Strange was driving to his son Edward Strange's house on the morning of May 12, 2011 when he met a pickup truck coming from that direction. As Bazel passed the truck, he noticed the driver scrunched down in the seat looking through the steering wheel and a tarp flapping over the truck bed covering something. Bazel went on to his son's house. No one was home when Bazel arrived, but the door was slightly open and the trim on the door by the latch was bent, indicating that someone had forced his way inside. When Bazel went inside the home, he noticed that a few things were thrown around the floor and that Edward's gun safe was missing. Bazel called 911 and then Edward. Bazel told Edward that his house had been broken into and also described to Edward the pickup truck that he had seen earlier.
>
> When Edward, a teacher at Kerens High School, received the call from his father, he stepped outside the classroom and onto the porch of the building. As he did, he saw a pickup truck that matched the description of the one that his father described. There were two people in the cab of the truck and a blue tarp covering a large object in the truck bed. Edward retrieved his own vehicle and followed in the direction that the truck went. Edward also called the Navarro County Sheriff's Office, reported seeing the truck, and told them that he was following it toward Goodlow.

-2-

As Edward drove, he saw a Kerens police officer not far behind him. Edward then saw the pickup parked in front of a house later identified as being Washington's home. Edward saw a man later identified as Bobby Gorman sitting in the driver's seat and a man later identified as Washington walking away from the truck carrying a duffle bag.

Edward decided to allow the Kerens police officer to arrive on the scene before he did, so Edward passed Washington's home, turned around, and then parked his vehicle a short distance from the pickup. When the officers removed the tarp from over the truck bed, Edward recognized his gun safe, which he later confirmed by way of records reflecting the serial number. When Edward returned home, he also noticed that his PlayStation game console was missing from his living room. The sheriff's office later returned to him his PlayStation 3 game console (for which he also had the serial number), PlayStation 2 and 3 games, controllers for the game system, a .22 rifle, and several other things.

Navarro County Sheriff's Detective Hank Bailey responded to the scene in Goodlow. Only Gorman was being detained at that time. Gorman confessed to Detective Bailey at the scene that he had stolen some of the items in the truck. Detective Bailey thought that Gorman must have had some help to be able to get the gun safe into the truck, but Gorman did not admit that he had any help. Gorman and his truck were transported to the sheriff's office.

Gorman gave his first of four statements to Detective Bailey at about 1 p.m. that afternoon. Gorman explained that he had pried open the door to Edward's house and stolen several items. In the bedroom of the house, he found a large safe that he could not move by himself. Gorman left Edward's house and went to Washington's house to get him to help move the safe. Washington agreed and went back to Edward's house with Gorman. The two men turned the safe on its side and slid it out the door on jackets and a piece of carpet until they were able to get it into the back of the truck. Gorman also stated that he had "done other burglaries in the area" and would help the officers locate the property he had stolen.

After talking to Detective Bailey and also learning that Edward and a Kerens police officer saw Washington initially walking away from the pickup when they first arrived where the pickup was, Navarro County Sheriff's Sergeant Clint Andrews went to Washington's house to locate Washington and to see if he had any involvement in the burglary. Washington said that he had no knowledge of a burglary and no knowledge of anything stolen on his property. Sergeant Andrews asked

if he could look around the outside of Washington's house. Washington allowed him to do so. Sergeant Andrews then asked if he could look around the inside of Washington's house. Washington consented. Once inside, Washington showed Sergeant Andrews his bedroom. Once inside the bedroom, Sergeant Andrews saw, in plain view, marijuana seeds and stems, marijuana residue, and cocaine residue. At that point, Washington said that he was not going to let him search any further.

All the occupants of the home were detained while Sergeant Andrews left and procured a search warrant for Washington's residence. After returning to Washington's residence with the search warrant, Sergeant Andrews found evidence from the burglary, including Edward's PlayStation game console and games, inside a bag in Washington's bedroom closet. Washington was arrested, and he gave a written statement to Sergeant Andrews later that day, which stated in part: "The cigarette package with the cocaine residue in it belongs to me and no one else in the residence. I claim full responsibility for the narcotics located inside my residence."

*Washington*, 2013 WL 5952144, at *1-*2.

Through his timely-filed federal habeas application, Washington asserts that his trial and appellate counsel were constitutionally ineffective and that the sentence related to his burglary conviction is void because "it falls outside of the maximum range of punishment." Dkt. No. 3.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713; *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord*

*Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies

-7-

not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

Sentencing-enhancement claim [Ground 3]

Washington alleges that his fifty-year sentence "is void as a matter of law because it falls outside the maximum range of punishment" as found by the jury. Dkt. No. 3 at 7 ("The jury found Petitioner guilty of a second degree felony which carries a maximum sentence of 2 to 20. No trier of fact found any of the alleged enhancement paragraphs true."). But, as the state habeas court found, in recommending that this ground be denied, Washington elected for the court – not the jury – to assess

punishment, and, relying on a presentence investigation report, over Washington's

objections, the court found the enhancement allegations to be true. *See* Dkt. No. 9-14

at 55, 59. Moreover, the Waco Court of Appeals rejected this claim on direct appeal

because

> a final written judgment is not required to prove a prior conviction. Here,
> the testimony of Sergeant Andrews and Detective Farmer together with
> the booking sheets, certified copies of criminal docket sheets, and certified
> copies of Texas Department of Safety Supplemental Criminal History
> Reporting Forms are sufficient for a reasonable trier of fact to find the
> existence of the prior convictions beyond a reasonable doubt.

*Washington*, 2013 WL 5952144, at *11 (citing *Flowers v. State*, 220 S.W.3d 919, 921-22

(Tex. Crim. App. 2007)).

Based on, particularly, the state court of appeals decision, Washington has not

shown that any state court determination as to this ground amounts to an

unreasonable application of clearly established federal law or is an unreasonable

determination of the evidence. The Court should therefore deny Washington's third

ground for relief.

Ineffective-assistance-of-counsel ("IAC") claims [Grounds 1, 2, 4, 5, & 6]

The Court reviews Sixth Amendment claims concerning the alleged ineffective

assistance of counsel under the two-prong test established in *Strickland v. Washington*,

466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper

standard for evaluating [a] claim that appellate counsel was ineffective ... is that

enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, the petitioner must demonstrate that the performance of his

attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to

affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170,

190, 202 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 134 S. Ct. at 17, 13)).

Accomplice witness instruction [Grounds 1 and 2]

Washington first claims that his trial counsel rendered constitutionally-ineffective assistance by "failing to request an accomplice witness instruction be added to the jury charge." Dkt. No. 3 at 6. Relatedly, Washington contends that his appellate

counsel was constitutionally ineffective for not raising on appeal that the trial court erred by not "ensur[ing] that the accomplice witness instruction [was] included in the jury charge." *Id.*

As set out above, Bobby Gorman was Washington's accomplice. And the state habeas court found that "Gorman was an accomplice as a matter of law" and that Washington "did not suffer egregious harm from the omission of an accomplice witness instruction because there was ample independent evidence to corroborate the testimony of Bobby Gorman." Dkt. No. 9-14 at 58-59 (further finding no reasonable likelihood of a different verdict had the accomplice witness instruction been given and that appellate counsel was not ineffective for failing to raise this issue).

Washington has not shown, and the undersigned cannot find, that these conclusions amount "to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)).

Juror #35 [Ground 4]

Washington next claims that trial counsel was ineffective because he "failed to either rehabilitate or challenge for cause juror #35," "who stated that she would believe the state's police witnesses simply because they were police." Dkt. No. 3 at 7 (further noting that "[s]even other potential jurors were struck for cause for the same answer").

As found by the state habeas court, in addition to providing the answer that Washington highlights, this juror also "indicated that she would not comment on or discuss the defendant/applicant's failure to testify," and, "[w]hen asked what burden

of proof she would require on a scale of one to five, with five being proof beyond a reasonable doubt, [she] responded 'it would be more than five, five and a half.'" Dkt. No. 9-14 at 56. That court concluded that, "[v]iewing the totality of [this juror's] responses during voir dire, seeking to have her remain on the jury was a reasonable trial strategy." *Id.* at 59.

And, considering all of this juror's responses, Washington has not shown, and the undersigned cannot find, that the state habeas court's conclusion unreasonably applies *Strickland* or is an unreasonable determination of the evidence. *See Feldman*, 695 F.3d at 378; *Cotton*, 343 F.3d at 752-53; *see also Rivers v. Quarterman*, 661 F. Supp. 2d 675, 691 (S.D. Tex. 2009) ("An 'attorney's actions during voir dire are considered to be a matter of trial strategy.' *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). Decisions made during jury selection are not an actionable ground for relief unless the underlying strategy is 'so ill chosen that it permeates the entire trial with obvious unfairness,' *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).").

<u>Gorman-related claims [Grounds 5 and 6]</u>

Washington's final Sixth Amendment claims concern his trial counsel's performance with regard to testimony related to his co-defendant, Bobby Gorman. Washington alleges that constitutionally-ineffective assistance occurred when counsel "opened the door to testimony connecting [him] to drug dealing" and because counsel "failed to object to the state's closing arguments regarding drug dealing." Dkt. No. 3 at 8. And he contends that counsel violated his Sixth-Amendment right to effective assistance of counsel by "fail[ing] to properly object to the introduction of an allegation

that [he] had made threats against his codefendant to sway his testimony." *Id*.

The state habeas court concluded that both claims lack merit:

11. Applicant's trial counsel's performance was not objectively unreasonable when she asked Bobby Gorman why he went to Applicant's home because counsel needed to show how stolen items got to Applicant'a bedroom and because counsel had no way of knowing that Bobby Gorman would respond that he went to Applicant's home "to purchase some crack."

12. Applicant's trial counsel's performance was not objectively unreasonable when she failed to object to the State's comments in closing argument concerning Applicant dealing drugs because, in light of the evidence presented, there was no valid legal objection to be made.

....

13. Applicant's trial counsel's performance was not objectively unreasonable when she objected to statements about Applicant's threats against Bobby Gorman because:

    a. Counsel did object to lack of notice.

    b. Counsel was able to confront and cross-examine Bobby Gorman.

    c. The probative value of evidence of the threat was not substantially outweighed by any prejudicial effect.

14. Applicant's trial counsel's performance was not objectively unreasonable when she introduced the exculpatory statement given by Bobby Gorman (Defense Exhibit 3) because the statement was the strongest exculpatory evidence available to counsel and directly supported the defensive theory that Applicant merely purchased the stolen property from Bobby Gorman.

15. Evidence that Bobby Gorman made the exculpatory statement under duress was highly probative because it impeached the strongest evidence offered by the defense.

16. Even if Applicant's threats against Bobby Gorman were communicated through a third party, Applicant's statements were subject to the "party opponent" exception to the hearsay rule and testimony about

> the threats were not offered to prove the truth of the threats but rather to show why Bobby Gorman would make a subsequent statement that was directly contradictory to two prior written statements given to law enforcement.

Dkt. No. 9-14 at 59-60.

Again, Washington has not shown, and the undersigned cannot find, that these conclusions unreasonably apply *Strickland* or are unreasonable determinations of the evidence.

The Court should therefore deny Washington's remaining, IAC-based, grounds for relief.

## Recommendation

The Court should deny the application for writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: November 30, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE